✓ ___ FILED   ___ ENTERED
___ LOGGED   ___ RECEIVED

2:02 pm, Oct 04 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

September 18, 2024

Katherine Tang Newberger, Esq.
Christina Wong, Esq.
Office of the Federal Public Defender
Tower II, 9th Floor
100 South Charles Street
Baltimore, Maryland 21201-2705

     Re:    *United States v. Delroy James Scott,*
               Criminal No. ELH-23-0179

Dear Counsel:

     This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Delroy James Scott (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 27, 2024, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offenses of Conviction

     1.    The Defendant agrees to plead guilty to Counts One and Two of the Indictment. Count One charges the defendant with Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). Count Two charges the Defendant with Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offense

     2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates specified in the Indictment, in the District of Maryland, the Defendant,

    *Count One (Coercion and Enticement)*

   a. Knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

   b. That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity.

*Count Two (Sexual Exploitation of a Minor)*

   a. Knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

   b. For the purpose of producing a visual depiction of such conduct; and

   c. The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

  3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2422(b) | 10 years | Life | Life | $250,000 | $100 and $5,000 |
| 2 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life (min. 5y) | $250,000 | $100 and $5,000 |

   a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

      d.      Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

      e.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      f.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      g.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

Waiver of Rights

5.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however,

and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

6.   The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7.   This Office and the Defendant understand, agree, and stipulate to the Stipulation of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and is incorporated by reference herein. The parties further stipulate and agree, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.2(c), that the Stipulation of Facts establishes the commission of additional offenses, and the plea agreement shall be treated as if the Defendant had been convicted of additional counts charging those offenses. The parties stipulate and agree to the following applicable sentencing guideline factors:

Group One: Coercion and Enticement of Minor Victim #1 (Count One)

    a.   Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

    b.   Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, a minor to engage in prohibited sexual conduct. (Subtotal: 30).

    c.   Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce the minor to engage in prohibited sexual conduct. (Subtotal: 32).

    d.   Pursuant to U.S.S.G. § 2G1.3(b)(4)(A)(i), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

    e.   Pursuant to U.S.S.G. § 2G1.3(b)(5), there is an eight (8) level increase because the defendant is pleading guilty under 18 U.S.C. § 2422(b) (Count 1) and the offense involved a minor who had not attained the age of 12 years. (Subtotal: 42).

Group Two: Sexual Exploitation of Minor Victim # 2 (Count Two)

f. The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

g. Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

h. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity and the use of a computer to persuade, to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

Group Three (Stipulated Offense): Coercion and Enticement of Minor Victim # 2 (Count Three)

i. Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

j. Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, a minor to engage in prohibited sexual conduct. (Subtotal: 30).

k. Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce the minor to engage in prohibited sexual conduct. (Subtotal: 32).

l. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A)(i), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

m. Pursuant to U.S.S.G. § 2G1.3(b)(5), there is an eight (8) level increase because the defendant is pleading guilty under 18 U.S.C. § 2422(b) (Count 1) and the offense involved a minor who had not attained the age of 12 years. (Subtotal: 42).

Group Four (Stipulated Offense): Coercion and Enticement of Minor Victim # 3 (Count Four)

n. Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

o. Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, a minor to engage in prohibited sexual conduct. (Subtotal: 30).

p. Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce the minor to engage in prohibited sexual conduct. (Subtotal: 32).

Group Five (Stipulated Offense): Coercion and Enticement of Minor Victim # 4 (Count Five)

q. Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

r. Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, a minor to engage in prohibited sexual conduct. (Subtotal: 30).

s. Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce the minor to engage in prohibited sexual conduct. (Subtotal: 32).

t. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A)(i), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

Group Six (Stipulated Offense): Sexual Exploitation of Minor Victim # 5 (Count Six)

u. The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

v. Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

w. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity and the use of a computer to persuade ~~to persuade~~, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

Group Seven (Stipulated Offense): Sexual Exploitation of Minor Victim # 6:

x. The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

y. Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

z. Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36).

Rev. August 2018

Group Eight (Stipulated Offense): Possession of Child Pornography (Count Seven)

aa. Pursuant to U.S.S.G. § 2G2.2(a)(1), the base offense level is 18.

bb. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor or a minor who had not attained the age of twelve (12) years. (Subtotal: 20).

cc. Pursuant to U.S.S.G. § 2G2.2(b)(5) there is a five (5) level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. (Subtotal: 25).

dd. Pursuant to U.S.S.G. § 2G2.2(b)(6) there is a two (2) level increase because the offense involves the use of a computer or an interactive computer service. (Subtotal: 27).

ee. Pursuant to U.S.S.G. § 2G2.2(b)(7)(A) there is a five (5) level increase because the offense involved more than 600 images. (Subtotal: 32).

Grouping:

ff. Group One and Group Three are the highest offense level (42), resulting in two units. The offense level for Group Two (38) and Group Six (38) are from 1 to 4 levels less serious, resulting in 2 additional units. The offense level for Group Five (34), and Group Seven (36) are 5 to 8 levels less serious, resulting in 1 additional unit, for a total of 5 units. Group Four (32) and Group Eight (32) are 9 or more levels less serious than the Group with the highest offense level and is therefore disregarded. Thus, pursuant to U.S.S.G. §§ 3D1.4, 4 levels are added to the highest offense level. (Subtotal: 46).

8. This Office does not oppose a two (2) level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one (1) level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Total: 43).

Rev. August 2018

Chapter Four Enhancement:

9. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Total: 48).

10. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

12. At the time of sentencing, this Office agrees to recommend that the Court impose a sentence of forty-five years' imprisonment. This Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

13. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

14. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

16. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a. Apple iPhone XR, model: A1984, s/n: DX3ZNDDCKXKP; and

   b. Homemade black computer tower #J21012513002, containing a Kingston SATA hard drive, 960GB, s/n: 50026B768381B312.

18. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

19. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

20. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil

or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

21. The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

22. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

23. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

## Additional Special Assessments in Sex Crimes Cases

24. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must pay an additional special assessment of $5,000, unless the Defendant is indigent.

25. **Assessments in Child Pornography Cases:** Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess: (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

## Defendant's Conduct Prior to Sentencing and Breach

26. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

27. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

28. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

Rev. August 2018

### Entire Agreement

29. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

*[signature]*

Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9-25-24
Date

Delroy James Scott

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/25/24
Date

Katherine Tang Newberger, Esq.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/26/24
Date

Christina Wong, Esq.

**Attachment A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Delroy James Scott ("Scott") is a resident of Baltimore City, Maryland, and was 21 years old at the time of the offenses. As detailed below, between November 2021 and May 2022, Scott exploited six minor females between the ages of 9 and 14. Pretending to 16 years old, and using a false name, Scott used mobile phones and online applications to meet and communicate with the minor victims. Scott then persuaded, induced, enticed, and coerced the minor victims to meet with Scott to engage in sex acts and/or to produce sexually explicit images and videos and send the images and videos to Scott.

Minor Victim #1 (Count 1):

Minor Victim #1, a resident of Baltimore County, was born in 2012 and was 9 years old at the time of the offenses against her. Scott initiated communication with Minor Victim #1 in November 2021 using the social network platform IMVU. Scott told Minor Victim #1 that his name was "X" and that he was 16 years old. Scott's IMVU username was "Semaj here" and his Snapchat username was "savage_scott1". Minor Victim #1 initially told Scott that she was 15 years old, and later admitted that her true age was 9 years old.

In January 2022, Scott convinced Minor Victim #1 to move their communication to the social media platform Snapchat, where they engaged in a live video chat. During the chat, Scott requested photographs of Minor Victim #1, and then asked her to provide her location. Scott asked Minor Victim #1 to meet with him at her house, including making the following statements:

- "Why Not. We can be sneaky";
- "Baby u can't come to the back door?";
- "I'm freaky and a wanna do freaky things with u bae no one got to know";
- "So u don't wanna be my girlfriend no more?"; and
- "was gonna spoil u with stuff on imvu."

Scott also sent the following messages to Minor Victim #1: "Look at how much money I have baby," and "if u listen I'll get u a lot of stuff."

Minor Victim #1 initially refused to meet with Scott, but eventually agreed. Scott traveled to Minor Victim #1's apartment complex in Baltimore County on two separate occasions between January and March of 2022. Both meetings were at Scott's suggestion through electronic communication using mobile phones and the internet. The first incident Scott persuaded Minor Victim #1 to meet him in a hallway of her apartment complex and Scott inserted his penis into Minor Victim #1's mouth. The second incident Scott entered Minor Victim #1's apartment and inserted his penis into Minor Victim #1's mouth.

Minor Victim #2 (Count 2 and Count 3):

Minor Victim #2, a resident of Fort Washington, Maryland, was born in 2009 and was 11 years old at the time of the offenses against her. Scott initiated communication with Minor Victim #2 on the social network platform IMVU in November 2021. Scott told Minor Victim #2 that his name was "Semaj," that he was 16 years old, and that he lived with his grandmother in Pennsylvania. Minor Victim #2 told Scott that she was in middle school and was 14 years old. Minor Victim #2 provided Scott with her address.

Scott initiated sexual chats with Minor Victim #2 using text messages and Google Duo. During a video chat Scott exposed his penis, masturbated, and persuaded Minor Victim #2 to take off her shirt. Scott asked Minor Victim #2 to meet in person, and texted, "U gonna let me fuck?" and, "Instead of fucking can u suck it?" Minor Victim #2 responded, "I don't wanna fuck ok nor do I want to suck u." Scott eventually persuaded Minor Victim #2 to meet at park near her house, where Scott kissed Minor Victim #2. Following the meeting, Minor Victim #2 texted Scott, "Well ok but hopefully tomorrow I get to see u again and maybe we'll kiss some more." Minor Victim #2 also asked Scott for the IMVU "credits" that he had promised her, and Scott responded, "I would if u would've sucked it."

Scott asked Minor Victim #2 to produce and send sexually explicit photographs to Scott, which he described, including a picture of Minor Victim #2 bent over with her genitals exposed to the camera and another of Minor Victim #2 bent over with her genitals exposed and her hands spreading her buttocks. Scott continued to request sexually explicit videos and photographs during his communications with Minor Victim #2. Minor Victim #2 eventually complied and on or about November 9, 2021, produced and sent to Scott a series of nine (9) images and two (2) videos which depict Minor Victim #2, naked from the waist down, some of which depict Minor Victim #2's exposed anus and genitals.

When Scott told Minor Victim #2 that he wanted to meet her again in person to engage in oral sex, Minor Victim #2 said she did not want to. Scott threatened Minor Victim #2 by telling her that if she did not send him additional sexually explicit images and meet with him, he was going to show the series of sexually explicit photographs that she sent him to her parents.

Scott sent the following messages to Minor Victim #2:

- "U being mean to me I'll do the same"
- "Imma show ur parents the pictures"
- "If u don't want me to show ur parents the pictures u gotta do what I say"
- "If u don't listen I'll show them and show people at ur school"
- "If u listen I'll delete the photo and leave u alone"
- "Ok now send me the pics like u promised"
- "I want butt pics"
- "Get down on ur knees and bend over and take one"
- "Ok tommar before u go to school u gonna do your other promise"
- "And now I want a twerking video down on ur hands and knees."

Minor Victim #2 told Scott that she was going to kill herself. Minor Victim #2 and sent Scott additional images of her genitals. Scott traveled to Minor Victim #2's residence the next morning and met with her in person. During the meeting, Scott inserted his penis in Minor Victim #2's mouth. Later that morning, Minor Victim #2 sent the following message to Scott, "yo dick tasted weird tho."

Minor Victim #3 (Count 4 – Agreed Conduct)

Minor Victim #3, a resident of Allegany County, Maryland, was born in 2008 and was 13 years old at the time of the offenses against her. Scott initiated communication with Minor Victim #3 in December 2021 using the social network platform IMVU. Scott told Minor Victim #3 that his name was "James" and that he was 16 years old. Scott's Snapchat username was "savage_scott1".

Using Snapchat, Scott requested that Minor Victim #3 produce and send images of her exposed breasts and buttocks, which Minor Victim #3 did. Scott communicated with Minor Victim #3 from December 2021 through February 27, 2022. In February 2022, Scott asked Minor Victim #3 if he could visit her. On February 27, 2022, Scott drove from his residence in Baltimore to Minor Victim #3's residence in Alleghany County and snuck in the residence through her bedroom window. Minor Victim #3's younger sister was in the room when Scott entered, and she quickly left the room. Scott then pressured Minor Victim #3 to put his penis in her mouth, and told her that if she did not comply, he would leave the house through the front door, alerting her parents. Minor Victim #3 did not comply, Scott then exposed his penis twice to Minor Victim #3 Minor Victim #3 ran out of her room and ran to her mother's room. Minor Victim #3's mother entered her daughter's bedroom and encountered Scott, who exchanged words with the mother before fleeing the residence through the bedroom window and driving away.

Minor Victim #4 (Count 5 – Agreed Conduct)

Minor Victim #4, a resident of Hyattsville, Maryland, was born in 2009 and was 12 years old at the time of the offenses against her. Scott initiated communication with Minor Victim #4 in March 2022 using the social network platform IMVU. Scott told Minor Victim #4 that he was 16 years old. Scott's Snapchat username was "Semajking_115."

Scott communicated with Minor Victim #4 on Snapchat between March 26, 2022, and March 29, 2022. Minor Victim #4 told Scott that she was in school and lived with her parents. Scott asked to meet with Minor Victim #4 and asked if she would "suck" his "dick." Minor Victim #4 told Scott that she had never done that, and Scott asked if he could be her first. On March 28, 2022, Scott used Snapchat to arrange to meet with Minor Victim #4 outside of her middle school in the morning before school started. Scott drove from Baltimore to the middle school to meet with Minor Victim #4 on 3 separate occasions.

After the first meeting, Scott sent the following messages to Minor Victim #4:

- "ur super cuteee I swear"
- "U saying u was nervous I was way more nervous I ain't wanna show it tho"

3

- "Ur lips is hella soft too btw"
- "Next time I need them to be wraps about something else"
- "U looked cute in that uniform" and
- "Are u a virgin"

The next day Scott again drove to Minor Victim #4's school and Scott persuaded Minor Victim #4 to touch his penis with her hand. Scott and Minor Victim #4 had the following exchange:

- Scott:             "U Don't like me no more do u"
                     "then why u lie to me"
                     "why u ain't do it"

- Minor Victim #4:   "Cause I was scared"

In subsequent chats, Scott again asked Minor Victim #4 if she would give him oral sex the next day, and that all she needed to do was, "suck on it and breathe through [her] nose." When Minor Victim #4 said no, Scott threatened as follows: "So u lied to me again u said next time," "Well I don't like being lied too and I do got a video of u doing it btw idc anymore," and "Since you lied to me and wanna be mean imma do the same."

Following those communications, Scott again drove to Minor Victim #4's school and met her in his car and caused Minor Victim #4 to engage in oral sex with Scott by putting his penis in Minor Victim #4's mouth.

Minor Victim #5 (Count 6 – Agreed Conduct)

Minor Victim #5, a resident of St. Mary's County, Maryland, was 10 years old at the time of the offenses against her. Scott initiated communication with Minor Victim #5 in April 2022 using the social network platform IMVU. Scott told Minor Victim #5 that he was 16 years old. Scott's IMVU username was "Semaj here" and his Snapchat username was "savage_scott1". Minor Victim #5 told Scott that she was 10 years old. Scott also communicated with Minor Victim #5 using Instagram.

During a live video chat on Instagram on May 8, 2022, Minor Victim #5 shared her location with Scott, who then told her that he was coming "to show ur parents everything." Scott then told Minor Victim #5 to stream video of Minor Victim #5 naked and posed in specific sexual positions exposing her genitals, and Minor Victim #5 complied. Scott used his Apple iPhone XR mobile phone to record the chat and live video. The video, 9 minutes and 20 seconds in duration, was found on Scott's phone, and depicted the Instagram chat created on May 8, 2022, that includes the chats listed below, and also depicted Minor Victim #5, bent over, with her dress lifted, and her genitals exposed.

Scott's messages during the May 8, 2022, chat included the following:

- "Hey sis wanna see how much money I got on imvu"

Rev. August 2018

4

- "Send me more cute pics and gift u"
- "How about this if I can get to see u in person I'll get u what ever u want"
- "And I still want the butt pics too then I'll gift u"
- "We live close by each other I can just walk there and show ur parents everything"
- "Turn on ur camera"
- "U want me to show u parents,"
- "Get on ur knees"
- "And bend over"

Minor Victim #6 (Agreed Conduct)

Minor Victim #6, a resident of Baltimore County, Maryland, was born in 2003 and was 15 years old at the time of the offenses against her. Minor Victim #6 met Scott on Instagram when she was in 9th grade. Scott was 18 years old at the time. Scott and Minor Victim #6 engaged in oral and vaginal sex on multiple occasions, and Scott recorded Minor Victim #6 engaged in sexually explicit conduct on at least one occasion. Minor Victim #6 also sent multiple videos and images of her masturbating her exposed genitals to Scott at his direction.

Search of Scott's Residence and Seizure of Devices

On May 11, 2022, investigators searched Scott's person and his residence at 341 E. 22nd Street, Baltimore, Maryland. During the search, investigators located and seized digital devices, including the following:

a. Apple iPhone XR, model: A1984, s/n: DX3ZNDDCKXKP; and

b. Homemade black computer tower #J21012513002, containing a Kingston SATA hard drive, 960GB, s/n: 50026B768381B312.

The items were forensically examined, and investigators located accounts and profiles that Scott used to communicate with the victims on both devices. The iPhone XR and the homemade computer also contained files depicting minors engaged in sexually explicit conduct. The files included dozens of images and more than 8 videos of child pornography. The child pornography included depictions of minors not referenced above, as well as images depicting at least one prepubescent minor with her genitals exposed in a lascivious manner. None of the images of child pornography located on Scott's iPhone were identified as previously seen images of child pornography.

The Apple iPhone XR, model: A1984, s/n: DX3ZNDDCKXKP; and the black computer tower #J21012513002, containing a Kingston SATA hard drive, 960GB, s/n: 50026B768381B312 were all produced outside Maryland and were shipped in interstate and foreign commerce. The Apple iPhone XR and computer tower were used, or intended to be used, to commit or to promote or facilitate the commission of the defendant's child exploitation and coercion offenses.

Scott agrees that he knowingly employed, used, persuaded, included, enticed, and coerced Minor Victim #2 and Minor Victim #5 to engage in sexually explicit conduct for the purpose of

producing visual depictions of that conduct. Scott also agrees that he knowingly possessed material containing images of child pornography. Scott agrees that all the images and videos described above were produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer. Further, Scott agrees that the materials he possessed that contained images of child pornography, all had been mailed, shipped, and transported in interstate and/or foreign commerce and affected interstate and foreign commerce by any means.

Scott admits that he used a facility and means of interstate commerce, to persuade, induce, entice, and coerce the victims to engage in sexual activity, and that he could have been charged with a criminal offense for engaging in the sexual activity.

All of the events described above occurred in the District of Maryland.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
Delroy James Scott

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Katherine Tang Newberger, Esq.
Counsel for Defendant

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Christina Wong, Esq.
Counsel for Defendant

6

Rev. August 2018