**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DELROY JAMES SCOTT,<br><br>Defendant. | CRIMINAL NO.  ELH-23-0179 |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT**
**OF A SENTENCE OF 45 YEARS FOR DELROY JAMES SCOTT**

The United States of America respectfully recommends that James Delroy Scott be sentenced to 45 years imprisonment followed by lifetime supervised probation for his pervasive sexual abuse and exploitation of children.  The victims of the defendant's sexual abuse included a 9-year-old.  The other victims were 10, 11, 12, 13, and 15 years old.  He met the victims online and pretended to be a teenager, coerced some of the victims to produce explicit videos, extorted victims, and met in person with victims (including the 9-, 11-, and 12-year-old), to engage in sex acts with him.

As discussed below, the statutory sentencing requirements for the crimes charged in this case mandate a sentence of no less than 15 years and up to life imprisonment.  Consideration of the sentencing factors enumerated in Title 18, United States Code, Section 3553(a) also recommend a significant prison sentence to protect the public from the defendant, to reflect the seriousness of the defendant's offenses, and to deter the defendant, who exploited particularly young and vulnerable children for his sexual desires.  In short, the only just sentence is a substantial period of incarceration, reflecting the seriousness of each of the defendant's disturbing criminal offenses.  Accordingly, this Court should impose a sentence of 45 years' imprisonment.

1

I.   **BACKGROUND**

On October 7, 2024, the defendant pled guilty to Counts One and Two of the Indictment, charging him with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) (Count One), and Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) (Count Two). The sentencing hearing on this matter is scheduled for March 21, 2025. United States Probation Officer Nicole Wonneman prepared the Presentence Report, which provides for a final offense level of 43, a criminal history category I, and an advisory guidelines of life imprisonment. The government agrees with the guideline calculation in the Pre-Sentence Report (PSR).

A.   **Facts of the Offense**

The facts in this case are truly disturbing and reflect the danger that the defendant poses to the public, and to children in particular. The facts, which the defendant agreed were true during the October 24, 2024 plea hearing, are set forth at ¶¶ 7-35 of the PSR (ECF 51). Those facts are not repeated here but are summarized below in the discussion of the nature and circumstances of the offense.

B.   **Sentencing Calculation**

1. Statutory Maximum Sentences

The maximum sentences that may be imposed for the counts of conviction are as follows:

    i.   Count One, Use of an Interstate Commerce Facility to Entice a Minor to Engage in Sexual Conduct, 18 U.S.C. § 2422(b):

        Life imprisonment with a 10-year mandatory minimum term, 5 years up to a lifetime of supervised release, a $250,000 fine, restitution, forfeiture, and a $100 special assessment.

    ii.  Count Two: Sexual Exploitation of Children Manufacture of Child Pornography, 18 U.S.C. § 2251 (Counts One through Twenty-Seven):

        30 years' imprisonment with a 15-year mandatory minimum term, 5 years up to a lifetime of supervised release, a $250,000 fine, restitution, forfeiture, and a $100 special assessment.

2. <u>Sentencing Guidelines</u>

The defendant's years of exploitation that make up the instant offenses and additional agreed conduct results in *eight* separate groups that compute to an offense score of 51, before any reductions. PSR, ¶ 110. The government agrees that the defendant is a criminal history category I. PSR ¶ 117. Because the total offense level, after acceptance of responsibility is 43,[1] the criminal history calculation has no impact on the guideline range in this case. An Adjusted Base Offense Level of 43 and any criminal history yields a guideline range of life imprisonment. PSR ¶ 158.

II. **ARGUMENT**

The defendant's conduct was disturbing and shows the worst of human nature. The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a lengthy sentence.

"In sentencing a defendant, first the district court 'shall consider ... the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.' 18 U.S.C. § 3553(a)(4)(A)." Regarding sentencing, the Supreme Court states, "the Guidelines should be the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines are the "natural starting point from which the sentencing court exercises its discretion under § 3553(a). *United States v. Langford*, 516 F.3d 205, 212 (3d Cir.2008). This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the

---

[1] The defendant's offense score after acceptance of responsibility is 48. ¶¶ 110-112. However, any offense over 43 shall be treated as a 43. ¶ 113.

former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Another factor that Section 3553(a) considers are similar sentences for similarly situated defendants for to avoid sentence disparities.  18 U.S.C. § 3553(a)(6).  Consideration of these factors necessitates a lengthy sentence.

### A.  Nature and Circumstances of the Offense

The nature and circumstance of the defendant's offenses are abhorrent.  From November 2021 through May 2022, he coerced at least 6 girls to engage in sexual activity with him, in person and online.  He targeted particularly vulnerable girls, ages 9, 10, 11, 12, 13, and 15).  The defendant pretended to be a teenage boy himself and proceeded to manipulate the victims for his sexual pleasure.  The young victims all believed they were talking to someone much closer to their own age.  The defendant's coercion included grooming the victims by increasing levels of sexual conversation, sending images and videos of his own genitals, and by requesting increasingly explicit images from the victims.  The defendant's manipulation would then move to incessant pressure, implicit threats, and then to overt threats.  Often, over their repeated hesitation and refusal, the defendant forced these young girls to meet him and engage in sex acts with him, and to produce images and videos of their exposed genitals for his sexual pleasure.  When two of the

victims refused, the defendant threatened to expose the 10-year-old and the 11-year-old to their parents.

The seriousness of defendant's sexual abuse and exploitation of such young victims through deceptive online activity and showing up at their homes for sex acts cannot be overstated. The defendant's serial sexual abuse of children only stopped when her grandmother was contacted by the *elementary school* where 9-year-old Minor Victim 1 attended and was informed that Minor Victim 1 had recently begun to act out, including trying to leave the school to "hang out with boys." Minor Victim 1 later disclosed the abuse to her grandmother, who contacted the police, leading to the defendant's arrest on May 11, 2022, and the wider federal investigation. But for that disclosure, the defendant's predatory sexual abuse and exploitation of young girls would have certainly continued. Undoubtedly, the defendant would have continued to prey on and abuse young girls he met online.

Below is a summary of the defendant's conduct towards the 6 victims reference in the stipulated facts:

1. **The Defendant's Exploitation and Sexual Abuse of Minor Victim 1 (age 9)**



(Minor Victim 1 – age 9)

The defendant met Minor Victim 1 online, lied about his age, and asked her for her address.

The defendant was aware of her Minor Victim 1's age.  The defendant asked Minor Victim 1 to "be sneaky" and to do "freaky things" with her.  Although Minor Victim 1 initially told the defendant she did not want to meet with him, her persisted, and traveled to her house on two separate occasions. The first incident, Scott convinced the 9-year-old to sneak out of her apartment and meet him in the hallway, where he caused her to perform oral sex on him.  The second time, approximately a month later, he convinced Minor Victim 1 to let him inside her apartment, where she again engaged in oral sex with him, and he ejaculated into her mouth.  During this second incident, the defendant either penetrated Minor Victim 1's anus with his penis – or attempted to.  Minor Victim 1 told the responding patrol officer, "he put me down on my stomach and he put his private part up my butt."  Minor Victim 1 later disclosed during a forensic interview the following:

- Minor Victim 1:    He started takin' down his pants and my pants and then he played with his "private part" on my butt and he just.., he pulled up his pants and my pants and then he left."

\*\*\*

- Minor Victim 1:    When he started puttin' it in, it started hurting...,...it started to hurt but that's it.

\*\*\*

- Minor Victim 1:    Um.., like ah.., dog type of thing
-
\*\*\*

- Interviewer:       What was he doing when his "private part" was in your butt?
- Minor Victim 1:    He was trying to put it in for a minute but he didn't.

6

## 2. The Defendant's Exploitation and Sexual Abuse of Minor Victim 2 (age 11)



(Minor Victim 2 – age 11)

The defendant met Minor Victim 2 online, lied about his age, and lied about where he lived. Scott initiated sexual conversations and streamed a video of himself masturbating to the 11-year-old. Although she told him she did not want to "fuck" or "suck" (his words), the defendant nevertheless coerced her to meet him at a park. The defendant drove approximately 70 miles to meet her at the park in Fort Washington, Maryland, where it appears from the messages that he kissed Minor Victim 2. Scott eventually convinced Minor Victim 2 to send him videos and images of her exposed genitals, and then threatened to show the files to her parents to force her to send more sexually explicit images and engage in sex acts with him.

With the power of his threats to expose the young girl, he continued to pressure her, until she told him she was going to kill herself. Even so, the defendant coerced her to send more images. At 6 am on the morning after Minor Victim 2 told the defendant that she was going to kill herself, the defendant arrived at her house. He sat in his car outside of Minor Victim 2's house and continued to blackmail her, telling her that he would show her parents the files she had sent him, unless she came out of her apartment and performed oral sex on him. The 11-year-old, terrified, met the defendant in the hallway of her apartment complex and complied.

### 3. The Defendant's Exploitation and Sexual Abuse of Minor Victim 3 (age 13)



(Minor Victim 3 – age 13)

The defendant met Minor Victim 3 online, lied about his age, and asked her for her address. The defendant coerced Minor Victim 3 to produce and send him nude images, depicted her breasts and buttocks. The defendant drove *to Alleghany County*, and texted Minor Victim 3 from outside of her house. The defendant then climbed in Minor Victim 3's bedroom window. Once inside, he pressured Minor Victim #3 to put his penis in her mouth, and told her that if she did not comply, he would leave the house through the front door, alerting the 13-year-old's parents. She refused. The defendant then twice exposed his penis to Minor Victim #3. Although not in the stipulated facts, Minor Victim #3 disclosed during an interview that the defendant put his penis on her forehead during the incident. When the mother entered the bedroom, having been alerted by Minor Victim #3's younger sister, the defendant fled through the window.

### 4. The Defendant's Exploitation and Sexual Abuse of Minor Victim 4 (age 12)



(Minor Victim 4 – age 12)

The defendant met Minor Victim 4 online, lied about his age, and asked her for the name of her middle school.  The defendant drove to the Hyattsville, Maryland middle school to coerce her to perform oral sex on hm.  He met her at the school on three separate mornings, engaging in increasing sexual acts with the 12-year-old on each occasions, starting with kissing, then causing Minor Victim 4 to masturbate him, and then threatened her ("I do got a video of u doing it btw idc anymore," and "Since you lied to me and wanna be mean imma do the same." ) to cause her to perform oral sex on him.  Minor Victim 4, fearing exposure to her family, complied.

### 5. The Defendant's Exploitation of Minor Victim 5 (age 10)



(Minor Victim 5 – age 10)

9

The defendant met Minor Victim 5 online, lied about his age, and caused her to produce sexually explicit videos. Minor Victim 5 was only 10 years old when the defendant exploited her. The defendant used flattery and promises of money to convince the little girl to send him a video depicting her exposed genitals. He also told her that he was sitting outside of her residence while texting her, and he threatened to tell her mother that she had produced nude images. The defendant's texts, coercing and instructing Minor Victim 5, included the following:

- "Hey sis wanna see how much money I got on imvu"
- "Send me more cute pics and gift u"
- "How about this if I can get to see u in person I'll get u what ever u want"
- "And I still want the butt pics too then I'll gift u"
- "We live close by each other I can just walk there and show ur parents everything"
- "Turn on ur camera"
- "U want me to show u parents,"
- "Get on ur knees"
- "And bend over"

Minor Victim 5 and sent the defendant a video of herself bent over, with her dress lifted, and her genitals exposed.

**6. The Defendant's Exploitation of Minor Victim 6 (age 15)**



(Minor Victim 6 – age 15)

The defendant met Minor Victim 6 when the defendant 18 years old, the victim was 15 years old and in the 9th grade. The defendant and Minor Victim #6 engaged in oral and vaginal sex on multiple occasions, and Scott recorded Minor Victim #6 engaged in sexually explicit conduct on at least one occasion. Minor Victim #6 also sent multiple videos and images of her masturbating her exposed genitals to the defendant at his direction.[2]

**7. Additional Victims**

In addition to the victims in the stipulated facts, between 2017 and 2022, the defendant engaged in similar unlawful conduct with additional minor victims. The documentation relating to each of these victims has been provided to the defense in discovery. The victims were between 12-years old and 16-years-old. The conduct included online exploitation, as well as in person oral sex and attempted penetration.

**B. The Need for the Sentence Imposed.**

There can be no doubt the "prevention of sexual exploitation and abuse of children constitutes a government objective of *surpassing importance*." *New York v. Ferber*, 458 U.S. 747,

---

[2] Minor Victim 6 provided an impact statement that is attached to this filing as Exhibit 1.

11

757 (1982) (emphasis added). The Court in *Ferber* went on to note that "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id*. at 758 n. 9. Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just deserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a very lengthy sentence.

12

### 1. **<u>Reflect the seriousness of the offense, promoting respect for the law, and provide just punishment.</u>**

This Court's sentence must consider the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43.

The defendant's actions violated federal law, but they also transgressed every conceivable normative principle undergirding our laws. The defendant sought out opportunities to exploit children for his own deviant desires. The defendant has forever affected numerous children and their families. This Court's sentence must express an appropriate level of social condemnation of his crimes.

### 2. **<u>Adequate Deterrence and need to Protect the Public.</u>**

Deterrence is important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See Id*. The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v.*

13

*Doe*, 538 U.S. 84, 103 (2003).  The defendant fits within that class.

The Eleventh Circuit recognized in *Irey* that research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat."  612 F.3d at 1214 (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008), ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

A sentence of 45 years will afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.  The defendant's conduct demonstrates that he sexually attracted to particularly young minors, and will go to great lengths to act on that desire. The defendant's conduct in this case demonstrates that he represents a danger to the public, particularly to young girls. The defendant has manipulated, used, and exploited the victims for his own sexual gratification without concern or care for the impact of his abuse.  There is a strong need to provide deterrence for any future criminal conduct and to protect the public from the defendant's crimes.

### C.  Victim Consideration

It is axiomatic that sexual abuse (particularly hand-on sexual abuse, which was experienced by 5 of the victims of the defendant's instant offenses) inflicts upon its victim enormous, devastating, and long-lasting harm.  That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims.  As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

14

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id*. at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). Sexually exploited children also struggle to develop healthy affectionate relationships, they suffer from sexual dysfunctions, and they have a tendency to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted).

      The defendant's victims were very young. Some were in elementary school when he sexually abused them. Yet every victim was old enough to form memories and remember these experiences. It is too early to tell how deeply the trauma is sewn. No one knows for sure when, where, or how the damage from the defendant's sexual abuse and exploitation will manifest itself as the victims grow older. But one thing is certain, the defendant destroyed any possibility of normality in their lives.

      The defendant not only sexually exploited the children, but he recorded it. The images and videos were saved, and the victims and their families will be victimized forever not knowing if pictures and videos of their abuse can be uploaded and live in perpetuity on the internet.

      As the Court is aware, victims and their families demonstrate trauma in different ways. The government does not expect most of the victims to attend the sentencing, and further impact statements are unlikely. Their inability and lack of desire to attend additional hearings reflects the harm the defendant caused the victims and their families. Many victims are reluctant to participate

further out of fear, embarrassment, and an unwillingness to relive the moments of their exploitation.

Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct and the impact of his conduct in crafting his sentence here. By sexually abusing and exploiting multiple particularly young girls, the defendant has likely wreaked a lifetime of emotional damage on each victim. By recording this sexual abuse, the defendant exposes each victim to a lifetime of possible exploitation and torment.

## IV.   CONCLUSION

The defendant sexually abused and exploited *six* children over an extended period of time. The defendant sought out particularly young, and particularly vulnerable girls. The victims' and their families' lives are forever changed by the defendant. The United States requests that this Court should sentence the defendant to 45 years' imprisonment and supervised release for life.

        Respectfully submitted,

        Kelly O. Hayes
        United States Attorney

By: _____
        Paul E. Budlow
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of March 2025, that a copy of the foregoing Government's Sentencing Memorandum was served electronically to counsel for the defendant.

Paul E. Budlow
Assistant United States Attorney